**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CHRISTIAN OKAFOR, | : | MOTION TO VACATE |
|    Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:11-CR-0482-TWT-JFK-5 |
| UNITED STATES OF AMERICA, | : | |
|    Respondent. | : | CIVIL FILE NO. |
| | : | 1:14-CV-0031-TWT-JFK |

**UNITED STATES MAGISTRATE JUDGE'S**
**FINAL REPORT AND RECOMMENDATION**

Movant, Christian Okafor, seeks via 28 U.S.C. § 2255 to challenge the constitutionality of his conviction and sentence entered in this Court under the above criminal docket number. The matter is before the Court on the § 2255 motion [212], on which a hearing was held, and on the parties' post-hearing briefs [233, 237].

**I.**    **Discussion**

    **A.**    **Background**

The Grand Jury for the Northern District of Georgia indicted Movant on ten counts: bank fraud conspiracy, count twelve; bank fraud, counts fourteen and sixteen through nineteen; and aggravated identity theft, counts twenty-two, and twenty-four through twenty-six. (Second Superseding Indictment at 7-14, ECF No. 111).

Represented by Stephen Friedberg and Bruce Morris, Movant entered into a plea agreement with the government to plead guilty to counts twelve, eighteen, and twenty-six. (Guilty Plea and Plea Agreement, ECF No. 150-1). Among other things, the government agreed to dismiss the remaining charges, and Movant agreed to waive his right to appeal or collaterally attack his conviction and sentence (with exceptions that are not applicable here). (Id. at 4, 12). The Court accepted Movant's guilty plea. (Tr. at 34, ECF No. 229). At sentencing, Movant's guideline range was seventy to eighty-one months. (Tr. at 5, ECF No. 208). The government recommended a downward departure to fifty months, and Movant requested a thirty-six month sentence. (Id. at 6). The Court imposed a forty-six month term of imprisonment. (Id. at 24).

Movant did not appeal but now brings a § 2255 motion, in which he asserts that he received ineffective assistance of counsel based on counsel's failure to file an appeal as directed. (Mot. at 2-3, ECF No. 212; Addendum at 2, ECF No. 226). Movant initially declared under penalty of perjury that he requested "Mr. Bruce H. Morris to timely file a notice of appeal" and that "Mr. Bruce H. Morris told Me that he would filed the [] requested appeal[.]" (Decl., ECF No. 212-1). In an amended declaration, Movant stated that he requested both Morris and Friedberg to file an appeal and that they failed to do so despite his explicit instructions. (Am. Decl., ECF

No. 226-1). The Court held an evidentiary hearing on July 9, 2014. (Tr., ECF No. 232).

**B.   Evidentiary Hearing**

Morris testified that he practices as a criminal defense attorney, has forty years of experience, and has been a member of the Georgia Bar since 1974. (Tr. at 4-5, ECF No. 232). Morris testified that at no time during the sentencing hearing did Movant instruct him to file an appeal, that after the hearing he and Movant did not speak other than to shake hands, that to his knowledge no-one contacted him after sentencing to tell him that Movant wanted to file an appeal, that Movant had not indicated any interest in appealing after the sentencing, and that he did not hear Movant request Friedberg to file an appeal or indicate any interest in appealing to Friedberg. (Tr. at 4, 6-8, ECF No. 232). Morris also testified that he had utmost confidence in Friedberg's honesty notwithstanding Friedberg's conviction for tax fraud that had occurred a number of years previously. (Id. at 12-13).

Friedberg – a criminal defense attorney who practiced from 1973 through 2003, was disbarred from 2003 through 2011, and was readmitted in 2011 – testified that he

had been convicted for a failure to report all income.¹ (Id. at 22-25, 44). Friedberg testified that after sentencing Movant did not direct him to file an appeal, that Movant did not indicate any interest in appealing, that Movant did not contact him after sentencing, that none of Movant's family members contacted him regarding an appeal, and that he did not hear Movant request Morris to file an appeal or indicate any interest in appealing to Morris. (Id. at 26-31). Friedberg stated that he had been contacted by Movant's girlfriend Kiyana Weber in regard to a deportation question, that he had contacted Movant's friend Rosita Oboh in regard to a key, that either Oboh or Weber had contacted him to obtain a copy of the plea agreement, but that there had been no contact in regard to an appeal. (Id. at 29-30).

Oboh testified that she learned from Movant that he had told Friedberg to file an appeal and that he was concerned when Friedberg did not answer his calls. (Id. at 57-58). Oboh testified that she called Friedberg and told him that Movant wanted to

---

¹Friedberg was convicted for one count of conspiring to defraud the United States in violation of 18 U.S.C. § 371 and one count of providing false information on an income tax return in violation of 26 U.S.C. § 7206(1). (Movant's Ex. 2, ECF No. 231). On cross-examination, Friedberg agreed that he had been convicted for conspiracy to defraud the United States and providing false information on a income tax form, as defined by Movant in his questions, and described the providing false information conviction as a conviction for a "back-door evasion charge[.]" (Tr. at 44, ECF No. 232).

4

appeal and that Friedberg said he would go and see Movant. (Id. at 58). When asked when she called Friedberg about an appeal, Oboh testified that she talked to him after sentencing, that she had called Friedberg about a week or two after sentencing, that she talked to Friedberg about a month after sentencing, that it "was not long because I called him straight away[,]" that she couldn't remember, that it wasn't a month, and that it was before a month. (Id. at 64-66). Oboh testified that she never called Morris. (Id. at 67-68).

Raissa Fobi, Movant's prior girlfriend, testified that she spoke with Friedberg on the phone about two or three months after sentencing and discussed that he was supposed to meet with Movant at the jail. (Id. at 73, 76).

Weber testified that within a week or so after Movant's sentencing she called Friedberg because Movant had expressed "not being happy with the sentence . . . and possibly filing an appeal" and that Friedberg said he would go and visit Movant and talk about it in depth. (Id. at 80-81). Weber testified that, right after sentencing, she called Friedberg a few times a week. (Id. at 81-82). Weber testified that she followed up with Friedberg when an appeal was not filed and that Friedberg again said that he would go and see Movant. Weber also testified that she never contacted Morris. (Id. at 93). Additionally, Weber testified that she learned in a phone call from an

5

investigator approximately two months before the hearing that she would be testifying for Movant, that she and Movant had been talking on the phone almost daily for the two weeks prior to the hearing, and that she never talked to Movant about the upcoming hearing or her upcoming testimony. (Id. at 84-88). Weber also testified that she sent a text message to Friedberg that said Movant wanted to appeal but admitted that she did not have the message with her although she had known about the hearing for approximately two months. When asked about the failure to provide the Court with such evidence, Weber stated that she had not thought about it, stated that she had thought about it earlier and thought it was not needed, and stated that she had been told that it was not necessary for the hearing. (Id. at 88-91).

Movant testified that Friedberg was the lead attorney in his case and that he told Friedberg immediately after sentencing, "I need to file an appeal[,]" that Friedberg said he would come and see him at the jail but did not, that he tried numerous times to contact Friedberg and could not, and that he had family and friends try and contact Friedberg. (Id. at 98, 100-01). Movant testified that he did not make the appeal request to Morris but made it to Friedberg. (Id. at 106). Movant testified that the reason he claimed in his original motion that it was Morris who failed to file an appeal as directed was because "Morris made all of the arguments . . . he was the lead

6

counsel." (Id. at 101). When asked why he did not state in his original motion that Friedberg failed to file an appeal as requested, Movant stated that he did not "think it was necessary since both of them are my lawyers and he was the lead person on the case." (Id. at 108). Movant admitted that after sentencing he never attempted to contact either Friedberg or Morris by mail. (Id. at 104).

### C. Post-Hearing Briefing

Movant contends that Friedberg is non-credible based on his 2001 convictions for conspiracy to defraud the United States and providing false information on an income tax return, that his lack of credibility is central to the Court's inquiry, and that "[i]t is hard to believe that a lawyer whose spirit after three decades in this honorable field was so thoroughly marbled by dishonesty . . . that he could now be redeemed or, as Mr. Morris claims, become 'more than honest.'" (Br. at 4-7, ECF No. 233). Movant argues that Friedberg demonstrates ongoing dishonesty by minimizing his past crimes and referring to them as "failure to report income" and a "back-door evasion charge[.]" (Id. at 6-7 (citation and internal quotation marks omitted)). Movant further argues that Friedberg's "self-preservation depends upon spinning a particular tale[,]" that a finding of ineffective assistance could put Friedberg's livelihood in jeopardy,

7

and that Movant and Friedberg stand on equal footing as to motivation to lie to this Court. (Id. at 7, 23).

Movant argues that Friedberg was deficient for failing to file an appeal when directed to do so and that prejudice is presumed. (Id. at 20-26). Movant further argues that Friedberg's and Morris's failure to consult with Movant regarding an appeal was deficient because Movant reasonably demonstrated that he was interested in appealing and because a rational defendant would have wanted to appeal when he did not receive the sentence that he asked for. (Id. at 26). Movant explains that it "mattered little to him that the government met him halfway through its § 5K motion, or that Judge Thrash gave yet another inch, the final sentence was nearly one year longer than [Movant] had wanted." (Id. at 30). Movant asserts that he was prejudiced because, but for counsel's failure to file an appeal, he would have appealed. (Id. at 31).

Respondent argues that the Court should credit counsels' testimony and not Movant's and his associates' testimony, which was vague, indefinite, and inconsistent. (Br. at 16-25, ECF No. 237). Respondent also argues that counsels' testimony shows that Movant did not indicate an interest in appealing and that a rational defendant would not have wanted to appeal when he had waived his right to appeal and received a very favorable sentence. (Id. at 26-28).

### D. Law and Recommendation

A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. Id. at 690-92. "In a section 2255 motion, a [movant] has the burden of sustaining his contentions by a preponderance of the evidence." Wright v. United States, 624 F.2d 557, 558 (5th Cir. 1980).

To show that counsel was ineffective for failing to file a notice of appeal, the defendant must demonstrate that counsel's failure was objectively unreasonable and prejudiced the defendant. Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000). Reasonable assistance requires a lawyer to file an appeal when instructed, and "a lawyer who disregards specific instructions from the defendant to file a notice of appeal" performs deficiently. Id. at 477. Prejudice will be presumed if the defendant shows that counsel failed to follow specific instructions to file an appeal. Gomez-Diaz v. United States, 433 F.3d 788, 790 (11th Cir. 2005).

Absent specific instructions to file an appeal, counsel provides professionally unreasonable service if (1) "a rational defendant would want to appeal" or the

9

"defendant reasonably demonstrated to counsel that he was interested in appealing" and (2) counsel did not consult with the defendant regarding an appeal. Flores-Ortega, 528 at 480.[2] "In answering the question of whether a rational defendant would want to appeal his sentence, it is relevant to ask whether there are any potential non-frivolous grounds for appeal, whether there was a guilty plea, and whether the plea expressly waived the right to appeal." Otero v. United States, 499 F.3d 1267, 1271 (11th Cir. 2007) (holding that absent an argument that an appeal-waiver exception applies, "any appeal taken by Otero would have been frivolous and would have been an appeal that no rational defendant would have taken").

Here, the Court declines Movant's invitation to *presume* that Movant told Friedberg to file an appeal and thereby find that Friedberg had a self-serving motive to lie about Movant's appeal request in order to avoid being found ineffective. Further, Friedberg answered Movant's questions on his crimes honestly and admitted that he had been convicted for conspiracy to defraud the United States and for providing false information on a income tax form, as defined by Movant in his questions. Referring to a conviction under 26 U.S.C. § 7206(1) as a failure to report income does not

---

[2] Absent presumed prejudice, whether the defendant would have appealed but for counsel's deficient consultation "will turn on the facts of [the] particular case." Flores-Ortega, 528 U.S. at 485.

10

minimize the crime. See Evans v. United States, 504 U.S. 255, 257 (1992) ("[P]etitioner was charged with . . . failure to report income in violation of 26 U.S.C. § 7206(1)"). Although the Court is not familiar with the term "back-door evasion[,]" the Court does not interpret it to minimize Friedberg's crimes in light of his honest admission of his convictions. Notwithstanding Friedberg's past convictions, his testimony was clear and consistent, and the record shows no current reason to find him non-credible. Morris's testimony also was clear and consistent.

The Court finds less than credible the evidence and testimonies presented by Movant. Movant's vacillated on which attorney he requested to file an appeal – he initially declared that he requested Morris to file an appeal, then declared that he requested Morris and Friedberg to file an appeal, and then testified at the hearing that he requested only Friedberg to file an appeal. Movant also vacillated regarding who he considered as his lead attorney, which was his alleged reason for originally stating that he requested Morris to file an appeal. The Court finds Movant's testimony to be unreliable and does not credit his most recent version of the facts – that he told Friedberg to file an appeal. Based on Oboh's erratic testimony regarding the time that she called Friedberg, the Court finds her assertions that she called Friedberg regarding an appeal to be non-credible. Fobi's testimony provides nothing to show that

11

Friedberg was told to file an appeal. The Court finds Weber's testimony to be less than credible based on her questionable assertion that she and Movant never even mentioned the hearing during their almost daily telephone conversations in the two weeks prior to the hearing and her shifting explanations as to her failure to produce the alleged text message as evidence. The Court finds no credible evidence showing that Movant requested Friedberg to file an appeal, and the Court credits Friedberg's and Morris's testimony that Movant did not request that an appeal be filed.

Further, the Court credits counsels' testimony that Movant did not demonstrate an interest in appealing and finds no credible testimony otherwise. Additionally, Movant has not convinced the Court that a rational defendant would have wanted to appeal. Movant pleaded guilty, agreed to an appeal waiver, and received a forty-six month sentence that was lower than the government's recommended fifty-month sentence (which itself was lower than the seventy to eighty-one month guidelines range). These facts show no rational basis for an appeal, and Movant's desire for a thirty-six month sentence, though understandable, without more, does not provide a rational and non-frivolous reason to appeal. See Otero, 499 F.3d at 1271 (holding that, absent an argument that an appeal-waiver exception applies, "any appeal taken by Otero would have been frivolous and would have been an appeal that no rational

12

defendant would have taken"). Counsels' failure to advise Movant after sentencing on his appeal rights was reasonable when (1) Movant had not demonstrated an interest in appealing and when (2) a rational defendant would not have wanted to appeal. Movant's ground for relief fails based on his failure to show that he requested counsel to file an appeal and based on his failure to show that counsel was deficient in failing to advise him after sentencing on his appeal rights.

## II. **Certificate of Appealability ("COA")**

Pursuant to Rule 11 of the Rules Governing § 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." To satisfy that standard, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Lott v. Attorney Gen., 594 F.3d 1296, 1301 (11th Cir. 2010)

13

(quoting Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)) (internal quotation marks omitted).

A COA is unwarranted because it is not debatable that Movant fails to meet his burden and show that counsel was ineffective. If the Court adopts this recommendation and denies a COA, Petitioner is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing § 2254 Cases in the United States District Courts.

### III. Conclusion

**IT IS RECOMMENDED** that Movant's § 2255 motion [212] be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion from the assigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED** this 23rd day of October, 2014.

_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE

14